IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

VICTOR M SCOTT,

       Petitioner,

v.                                       CASE NO. 5:12-cv-278-MP-GRJ

SECRETARY, FLA. DEPT. OF
CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The Respondent filed a response and an appendix with relevant portions of the state-court record. (Doc. 21.) Petitioner filed a reply. (Doc. 22.) Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[1]

### Summary of State Court Proceedings

In November 2005, Petitioner was charged with aggravated battery and attempted second degree murder of Sonny Paul, and aggravated assault, aggravated battery, and attempted kidnapping of Melody Porter. (Doc. 21-1 at 36-37.) The charges pertaining to Melody Porter were severed for trial. Petitioner was charged by an amended information in June 2006 of two counts of aggravated battery against Sonny Paul. (Doc. 21-1 at 84-85.)

At trial, the State admitted into evidence a video interview of Sonny Paul by

---

[1]Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

Detective Melanie Law at Bay Medical Center on October 19, 2005, several weeks after the September 25th attack.  (Doc. 21-3 at 27.)  In the video, Sonny Paul states that Petitioner and his friend beat him up.  (Doc. 21-3 at 32.)  He identified Petitioner's car as a black Kia.  (Doc. 21-3 at 33-34.)

At trial, Sonny Paul testified that prior to the attack, Petitioner had been threatening him for money.  (Doc. 21-3 at 63-64.)  Petitioner made a deal with Sonny Paul that if he found his expensive bracelet, he would forgive any debt Petitioner owed. (Doc. 21-3 at 69.)  Later, Sonny Paul found a bracelet and approached Petitioner in his car, asking if the bracelet was his.  (Doc. 21-3 at 69.)  Petitioner told Sonny Paul it was not, and Sonny Paul began to walk away from the car.  *Id.*  Petitioner got out of the car and asked Paul for a light, and when Sonny Paul reached in his pocket to get a lighter, Petitioner hit him with a gun.  (Doc. 21-3 at 71.)  Sonny Paul testified that he did not remember anything after being hit with the gun.  (Doc. 21-3 at 71.)

Defense witnesses Bobby Stackhouse and Michael Shannon both testified that the man who beat up Sonny Paul was not Petitioner but another man who jumped into the passenger seat of the vehicle before the car drove off.  (Doc. 21-3 at 117, 131-132.) Bobby Stackhouse testified on cross-examination that the man who assaulted Sonny Paul was not wearing rings, but was hitting him with an object.  (Doc. 21-3 at 119.) Michael Shannon testified that he did not see any weapon in the attack.  (Doc. 21-3 at 134.)

Following the close of the State's case-in-chief, Petitioner's trial counsel moved for a judgment of acquittal, which was denied.  Petitioner did not testify in his own defense. The jury convicted Petitioner of aggravated battery without firearm, and

acquitted him of the second charge of aggravated battery.  (Doc. 21-2 at 66.)  He was sentenced to 15 years imprisonment.  (Doc. 21-2 at 72-76.)

On direct appeal, appointed counsel filed an initial brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).  (Doc. 21-3 at 263-97.)  The First DCA *per curiam* affirmed Petitioner's judgment and sentence without a written opinion on April 22, 2008. (Doc. 21-3 at 336.)

On March 26, 2009, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850.  (Doc. 21-5 at 119-151.)  The court summarily denied relief as to all but two grounds, and granted an evidentiary hearing on the remaining claims.  (Doc. 21-5 at 164-65.)  After the hearing, the court denied the remaining claims.[2]  (Doc. 21-7 at 5-12.)  Petitioner appealed the decision, and the First DCA affirmed *per curiam* without written opinion.  (Doc. 21-8 at 277.)

The instant Petition followed.  Petitioner advances the following seven claims for relief: (1) trial counsel destroyed the credibility of the defense witnesses in his opening statements; (2) trial counsel refused to let Petitioner testify at trial; (3) trial counsel failed to call eyewitness Victoria McCaritie to testify at trial; (4) trial counsel failed to investigate and obtain evidence, a BB gun, used in the assault; (5) trial counsel failed to conduct a pretrial investigation, failed to consult a treating physician, and failed to object to Exhibit "L" being entered into evidence; (6) trial counsel elicited harmful inadmissible hearsay testimony from Detective Law about the statements of a non-

---

[2]Petitioner filed an amended motion for post conviction relief on November 2, 2009, raising an additional five grounds for relief.  (Doc. 21-6 at 35-59.)  The Court set an evidentiary hearing on Petitioner's amended motion on July 16, 2010.  (Doc. 21-6 at 196-97.)

testifying witness; and (7) cumulative error by trial counsel rendered his representation constitutionally deficient.  (Doc. 1.)

## Section 2254 Standard of Review

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at 1302, 1306.

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the

merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); *see* § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,*

535 U.S. 685, 694 (2002) (citing *Williams* ).  "Under the 'contrary to' clause, a federal

habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than this Court has on a set of materially indistinguishable facts. Under

the 'unreasonable application' clause, a federal habeas court may grant the writ if the

state court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529

U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not

require citation of our cases-indeed, it does not even require *awareness* of our cases,

so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a

state court's decision was unreasonable must be assessed in light of the record the

court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified

how the federal habeas court should address the "unreasonable application of law" and

the "unreasonable determination of facts" tests.  The court acknowledged the

well-settled principle that summary affirmances, such as the Florida First District Court

of Appeal's in this case, are presumed adjudicated on the merits and warrant

deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770,

784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th

Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the

Supreme Court has confirmed that determining whether the state court unreasonably

applied the law or unreasonably determined the facts requires only a decision, not an

opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result."  *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Gill*, 133 F.3d at 1290.

Because the Petition alleges ineffective assistance of counsel, a review of the applicable law is necessary.  Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to

carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish

that "no competent counsel would have taken the action that his counsel did take."

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The

relevant question is not whether counsel's choices were strategic, but whether they

were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no

"absolute rules" for determining whether counsel's actions were indeed reasonable, as

"[a]bsolute rules would interfere with counsel's independence–which is also

constitutionally protected–and would restrict the wide latitude counsel have in making

tactical decisions."  *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold

a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental

processes underlying the strategy."  *Chandler v. United States*, 218 F.3d 1305, 1314

n.16 (11th Cir. 2000) (en banc).  "No lawyer can be expected to have considered all of

the ways [to provide effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other
> reasonable courses of defense (that the lawyer did not think of at all)
> existed and that the lawyer's pursuit of course A was not a deliberate
> choice between course A, course B, and so on.  The lawyer's strategy
> was course A.  And [the Court's] inquiry is limited to whether this strategy,
> that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's

unreasonable conduct might have had "some conceivable effect on the outcome of the

proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.  When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786.  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for

judging the performance of counsel "is a most deferential one."  *Id.*  at 788.   When

combined with the extra layer of deference that § 2254 provides, the result is double

deference and the question becomes whether "there is any reasonable argument that

counsel satisfied *Strickland's* deferential standard."  *Id*.  Double deference is doubly

difficult for a petitioner to overcome, and it will be a rare case in which an ineffective

assistance of counsel claim that was denied on the merits in state court is found to

merit relief in a federal habeas proceeding.

**DISCUSSION**

***Claim (1): Trial counsel was not ineffective for allegedly destroying the credibility of the defense witnesses in his opening statement.***

Petitioner contends that his trial counsel rendered ineffective assistance by

destroying the credibility of the defense witnesses in his opening statement.  Petitioner

alleges that trial counsel told the jury that the defense witnesses, Bobby Stackhouse

and Michael Shannon, were "street level crack cocaine dealers from a poor part of

town," and that they were "drunk on alcohol" and "high on cocaine."  (Doc. 1 at 7-8.)

This ground was addressed at the evidentiary hearing.  (Doc. 21-8 at 55.) In the

hearing, trial counsel acknowledged making those statements, and stated that it was

part of his strategy to build credibility with the jury by dealing with the witnesses'

background "head on."  (Doc. 21-8 at 75.)

In rejecting this claim on postconviction review, the state court concluded that:

> "At the evidentiary hearing, trial counsel admitted to commenting about
> the character and background of the witnesses.  He stated that he wanted
> to bring these fasts to light before the State impeached these witnesses
> using the same facts, and consequently making it appear like defense
> counsel was attempting to hide something.  Since defense counsel was
> honest and upfront with the jurors, he believed that he could build

> credibility with them.  Accordingly, this was a strategic decision by counsel
> and not ineffective assistance.  *See Dillbeck v. State*, 964 So. 2d 95, 101
> (Fla. 2007)(counsel's opening statement that that the murder was "brutal"
> was not ineffective assistance of counsel, but instead was trial strategy
> aimed at softening the blow of damaging evidence that the jury was about
> to hear)."

(Doc. 21-7 at 10.)

As the state court concluded, trial counsel's mention of the defense witnesses as "crack dealers" was calculated to build credibility with the jury by being honest about the witnesses' backgrounds.  Counsel knew that the State could impeach the defense witnesses with this information, so he made the strategic decision to bring it out in the opening statement to build trust with the jury.  Counsel's decision to include this information in his opening statement was reasonable.  Petitioner has not shown that any errors by counsel regarding his description of the witnesses in his opening statement satisfies either the performance or prejudice prongs of *Strickland*, and he has made no showing that the state court's rejection of this claim on the merits was contrary to, or an unreasonable application of, federal law.

### Claim (2): Trial counsel was not ineffective for refusing to let Petitioner testify at trial.

Petitioner contends that his trial counsel rendered ineffective assistance by telling him that he could not testify at trial.  Plaintiff alleges that during a recess at trial, he argued with counsel about testifying and counsel told Petitioner that he would not testify and could not speak to the judge.  (Doc. 1 at 8.)

This claim was reviewed by the state postconviction court after an evidentiary hearing.  In denying Petitioner's claim, the state court noted that trial counsel testified to several long discussions with Petitioner about whether or not he would testify, including

a discussion in-between the two day trial.  (Doc. 21-7 at 7.)  The state court referenced a memo prepared after the trial which explained Petitioner's decision not to testify and discussed the interaction between the two at trial, where counsel asked Petitioner if he wanted to testify and Petitioner stared at him for close to a minute instead of answering. *Id*.  In the memo, counsel explained that his rationale for advising Petitioner not to testify was that he was worried about Petitioner's demeanor on the stand and believed that his testimony would not be beneficial.  (Doc. 21-7 at 7-8.)  The court found Petitioner's testimony about counsel's refusal to let him testify unbelievable and found Petitioner's claim incredible that he did not know of his right to testif.  (Doc. 21-7 at 8.)  The court therefore found that counsel's performance was not deficient.

In rejecting Petitioner's claim, the state court credited the testimony of trial counsel over Petitioner's testimony.   "Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo v. Secretary for Dept. of Corrections,* 664 F3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422 (1983)).  Questions about the credibility of witnesses are questions of fact, and "the AEDPA affords a presumption of correctness to a factual determination made by a state court."  *Id.*   It is Petitioner's burden to rebut the presumption of correctness by clear and convincing evidence.  *Burt v. Titlow,* 134 S. Ct. 10 (2013).

The state court found counsel's testimony that Petitioner did not state that he wanted to testify was more credible than Petitioner's testimony that counsel refused to let him testify.  Furthermore, the court found that Petitioner's claim that he did not know

of his right to testify was not believable, as he had just recently been on trial for charges

stemming from the attack on Melody Porter.  The Court will not disturb the credibility

findings of the state court.  Therefore, on this record, Petitioner has not shown that the

state court's rejection of this ineffective-assistance claim on the merits was contrary to,

or an unreasonable application of, federal law.

As Respondent points out, Petitioner's further argument that trial counsel's

failure to advise Petitioner that he had the right to testify and only he could waive it, was

an argument that Petitioner failed to present to the state courts in his postconviction

motion and, therefore, the argument is non-exhausted and procedurally barred.  *Bailey*,

172 F.3d at 1303.

### Claim (3): Trial counsel was not ineffective for failing to call eyewitness Victoria McCaritie to testify.

Petitioner claims that his trial counsel was ineffective for failing to call eyewitness

Victoria McCaritie to testify at trial.  He alleges that Ms. McCaritie saw Henry Harper,

not Petitioner, beating Sonny Paul and that Petitioner remained in his car during the

beating.  (Doc. 1 at 5.)  Petitioner claimed that  Ms. McCaritie heard Harper say "nigga

didn't I tell you I want my money" while beating Sonny Paul.  (Doc. 1 at 9.)

In rejecting this claim on postconviction review, the state court explained:

"At the evidentiary hearing, trial counsel testified that he was not sure
whether he would need to call Victoria McCaritie.  Counsel said that Ms.
McCaritie had given an initial statement that was favorable to the
Defendant, but she had subsequently given sworn deposition testimony
that the Defendant was involved in the beating.  He stated that it would
have been a gamble to call her because he did not know which story she
would provide to the jury, as she had given "too many different versions of
one event."  Additionally, even if she testified favorably for the Defendant,
the State would have impeached her using her deposition testimony.
Counsel stated that Ms. McCaritie was present at the courthouse during

the trial, but counsel was going to introduce her initial statement through Detective Law to avoid calling her.  Although Detective Law was a hostile witness, trial counsel managed to emphasize during his direct examination of the detective that Ms. McCaritie had not implicated the Defendant in her tape recorded statement.  After the two favorable defense witnesses, Bobby Stackhouse and Michael Shannon, both testified as eyewitnesses and stated that the Defendant was not the perpetrator, trial counsel made the strategic decision that he did not need to call Victoria McCaritie as a witness.  Thus, this was not ineffective assistance but a calculated defense strategy."

(Doc. 21-7 at 9.)

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).   On this record, the Court concludes that Plaintiff has failed to establish any deficiency in counsel's performance.  Counsel expressed a reasonable strategy regarding this witness, deciding not to call her because of her varying and unpredictable versions of what had happened during Sonny Paul's beating.  The state court accepted counsel's decision as reasonable.  Accordingly, Petitioner has not shown that the state court's rejection of this claim on the merits was contrary to, or an unreasonable application of, federal law.

### Claim (4): Trial counsel did not fail to investigate and obtain exculpatory evidence.

Petitioner argues that trial counsel failed to investigate and obtain exculpatory evidence.  He contends that Henry Harper was the actual perpetrator in the assault, and Harper used a BB gun to beat up the victim.  (Doc. 1 at 5, 10-11.)  He maintains that trial counsel was ineffective for failing to obtain the BB gun, which he argues was a

significant piece of evidence that would have exonerated Petitioner.  (Doc. 1 at 11.)

The court addressed this ground at the evidentiary hearing.  Counsel testified that he had not tried to locate the gun because if the gun had been found, the State may have deposed or called Harper as a witness.  (Doc. 21-8 at 80.)  Counsel believed that having Harper testify would be harmful to Petitioner, as the State's theory was either that Petitioner beat Sonny Paul or had Harper beat Sonny Paul at his request. (Doc. 21-8 at 80-81.)  Having Harper testify opened the possibility of Harper either blaming Petitioner or claiming that Petitioner made him commit the beating.  (Doc. 21-8 at 78-79.)  As a result, counsel determined that the best strategy was to entirely avoid bringing Harper into the case.  On the basis of this testimony, the state court concluded that the decision of counsel not to investigate the BB gun used in the assault was reasonable.

In view of the deference that must be afforded to counsel's strategic decisions, on this record the Court concludes that Plaintiff has failed to establish any deficiency in counsel's performance.  Counsel made a reasonable decision to keep Henry Harper out of the case as a witness and declined to investigate whether a BB gun was used because part of the State's theory of the case was that Petitioner had Henry Harper execute the beating on his behalf.  Counsel instead relied on two other witnesses, Bobby Stackhouse and Michael Shannon, who both testified that someone else beat Sonny Paul, not Petitioner.  Accordingly, Petitioner has not shown that the state court's rejection of this claim on the merits was contrary to, or an unreasonable application of, federal law.

**Claim (5): Trial counsel was not ineffective with regard to the pre-trial investigation, and was not ineffective for failing to consult with a treating physician, and failing to object to the introduction of exhibit "L".**

Petitioner contends trial counsel was ineffective for failing to object to the admission of State Exhibit L, an emergency room triage report on victim's injuries. (Doc. 1 at 11.)  He also argues that trial counsel was ineffective because he did not conduct a pretrial investigation and did not consult the physician who treated Sonny Paul after the beating.  *Id.*

At the evidentiary hearing, trial counsel testified that he had stipulated to the entry of Sonny Paul's medical records at trial because the records contained an inconsistent statement by Sonny Paul as to where he was beaten.  (Doc. 21-8 at 61.) He stated that had he objected, the medical records would have come into evidence through the testimony of the records custodian.  (Doc. 21-8 at 62.)  Counsel further explained that the State could prove aggravated battery by showing use of a deadly weapon rather than the extent of the victim's injuries, and he did not believe that the extent of the injuries was an important factor in the State's case.  (Doc. 21-8 at 62.) Counsel claimed that he did not call a medical expert to testify to the victim's injuries because he did not want to lose credibility with the jury by arguing that Sonny Paul's injuries were not severe.  *Id.*  The court concluded that trial counsel's decisions with respect to stipulating to the medical records and the decision not to call a medical expert were reasonable.  (Doc. 21-7 at 10.)

As the record reflects, counsel testified at the evidentiary hearing that he stipulated to the admission of the medical records as a matter of strategy.  His strategy was to bring in Sonny Paul's inconsistent statement about where he was beaten in

Case 5:12-cv-00278-MP-GRJ   Document 30   Filed 04/15/15   Page 17 of 21

*Page 17 of 21*

order to impeach the witness.  Counsel also made a strategic decision not to call a

medical expert because he believed the extent of Sonny Paul's injuries was not an

important factor in the State's case - for aggravated battery, the State could prove that

Sonny Paul had been attacked with a deadly weapon instead of demonstrating the

extent of his injuries.  On this record, the Court cannot say that this strategy by counsel

was unreasonable.  However, even assuming these decisions by counsel were

deficient, Petitioner has not shown that, but for the error, there was a reasonable

probability that the outcome of the trial would have been different.  In the absence of

the serious injury needed for aggravated battery, the State could have shown that the

beating occurred with a deadly weapon.

Accordingly, on this record, Petitioner has failed to show that the state court's

rejection of this ineffective-assistance claim was contrary to or an unreasonable

application of *Strickland*.

### Claim (6): Trial counsel was not ineffective for eliciting hearsay testimony from Detective Law.

Petitioner claims that trial counsel was ineffective because he elicited harmful

hearsay testimony from Detective Law about Victoria McCaritie's statements.  (Doc. 1

at 13.)  The exchange that Petitioner challenges is as follows:

> Detective Law: She, some of the descriptors she gave in the statement saying that the one who is doing the beating had large rings on his hand and Victor Scott was the person we found with large rings on his hand.
>
> Counsel: She doesn't say that in the statement, does she, she said it's like he had large rings on his hand, just like he was whooping him with brass knuckles, that's what she says.
>
> Detective Law: If you can tell me a page I will check it.

*Case No: 5:12-cv-278-MP-GRJ*

(Doc. 21-3 at 177.)

This ground was withdrawn from consideration from Petitioner's Rule 3.850 motion.  (Doc. 21-8 at 49.)  Thus, it has not been presented to the state court for review and is unexhausted and procedurally barred.

Even if this claim had been exhausted, it would still not form a basis for federal habeas relief.[3]  Trial counsel testified at the evidentiary hearing that he did not call Victoria McCaritie to testify because she had given several different accounts of the beating, both favorable and unfavorable to Petitioner.  (Doc. 21-8 at 76-77.)  Counsel's strategy was to try to have Detective Law testify as to McCaritie's statement that someone other than Petitioner had attacked Sonny Paul.  *Id*.  Counsel made the reasonable decision not to call a witness, who had given varying versions of the attack and was not credible, and instead he tried to admit her favorable statement into evidence through the testimony of Detective Law.  Although trial counsel may have elicited testimony unfavorable to Petitioner through his examination of Detective Law, this does not render his decision to examine Detective Law about McCaritie's statement deficient.  As such, Petitioner has not shown that counsel's performance was constitutionally deficient and therefore Petitioner has failed to demonstrate that counsel violated the performance prong of *Strickland*.

### Claim (7): Cumulative Effect of Counsel's Errors

Petitioner conclusionally alleges that "trial counsel's errors, if not by themselves, cumulatively caused the Petitioner to be convicted of a crime he is innocent of."  (Doc.

---

[3] Pursuant to 28 U.S.C. § 2254(b)(2), a habeas petition may be denied on the merits, notwithstanding Petitioner's failure to exhaust state court remedies.

1.) In rejecting a similar "cumulative error" argument made by a section 2254 petitioner, the Eleventh Circuit has stated "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564 (11th Cir. 2009) (*per curiam*). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

As previously discussed, Petitioner has not demonstrated that the state court erred in concluding that none of his trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance.  Therefore, there are no errors to accumulate and Petitioner has not demonstrated his trial was fundamentally unfair.  *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30-*31 (N.D. Fla. Sept. 30, 2009)("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair."). Accordingly, Petitioner's seventh claim for relief is due to be denied because it has no merit.

**Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. The petition for writ of habeas corpus (Doc. 1) should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 15th day of April 2015.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**